# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**FILED**

**January 10, 2023**

EDYTHE NASH GAISER, CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**CHAD MICHAEL GOCHENOUR,**
**Respondent Below, Petitioner**

**vs.) No. 22-ICA-22** (Fam. Ct. of Berkeley Cnty. No. 21-D-732)

**LEANNE MICHELE GOCHENOUR,**
**Petitioner Below, Respondent**

## MEMORANDUM DECISION

Petitioner Chad Gochenour (hereinafter "husband") appeals the "Order Granting Petitioner's Motion for Remand Order for Appeal Purposes" entered by the Family Court of Berkeley County on July 15, 2022.[1] Mr. Gochenour asserts that the family court erroneously held that an ante-nuptial agreement was invalid and unenforceable. His wife, Respondent Leanne Gochenour (hereinafter "wife"), responds in support of the family court's ruling. Husband did not file a reply brief.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2022). This Court has considered the parties' briefs and the record on appeal. The decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the family court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Prior to the parties' marriage, husband owned a motorcycle racing business and had approximately $1,900,000 in assets. Wife had no assets and approximately $18,000 debt. The parties were set to be married on January 21, 2007, out-of-state. On January 8, 2007, thirteen days before the wedding, husband presented an ante-nuptial agreement to wife, which was prepared by husband's attorney, and told wife that he would not marry her unless she signed it.

Husband presented testimony in family court that the parties discussed the ante-nuptial agreement several times throughout the relationship and wife was agreeable with it. However, wife testified that the agreement was never brought up until thirteen days

---

[1] Petitioner is represented by Alyson A. Dotson, Esq., and Michelle L. Bechtel, Esq. Respondent is represented by Christopher D. Janelle, Esq.

1

before the wedding. Wife further testified that she was upset and did not understand the legalese in the agreement; because she did not understand the legal wording, she only skimmed the agreement. When asked in family court whether she knew the purpose of the agreement, wife stated, "so that I could not take his business." Nonetheless, wife filled out her portion of the agreement and signed before a notary. Wife did not obtain independent counsel and was not verbally instructed to do so.

The parties were married as planned on January 21, 2007. Husband continued to grow his business and earned approximately $200,000 per year. Wife completed her teaching degree shortly after the parties married and earned approximately $50,000 per year. The parties had two children, now ages fifteen and nine. Wife filed for divorce in October of 2021 and husband sought to enforce the ante-nuptial agreement. The ante-nuptial agreement, if valid, would prevent wife from claiming equitable distribution or survivor rights of any kind.

The family court determined that the ante-nuptial agreement was unenforceable and invalid because husband failed to prove the agreement was signed by wife voluntarily, with knowledge of its content and legal effect, and free from duress. *See Owen v. Owen*, 233 W. Va. 521, 759 S.E.2d 468 (2014). Husband appealed the family court's decision to the Berkeley County Circuit Court, which refused the appeal and remanded the case back to family court for further proceedings. Husband then filed a Notice of Intent to Appeal with the Supreme Court of Appeals of West Virginia. The Supreme Court refused the appeal because the circuit court's order called for further proceedings on remand. Husband then filed a "Motion for Remand Order for Appeal Purposes" with the family court, asking the court to enter an order allowing an appeal solely on the ante-nuptial issue. The family court granted the motion. Husband now appeals the family court's ruling holding the ante-nuptial agreement invalid and unenforceable. Our standard of review is as follows:

> "In reviewing . . . a final order of a family court judge, we review the findings of fact made by the family court judge under the clearly erroneous standard, and the application of law to the facts under an abuse of discretion standard. We review questions of law *de novo*." Syl. Pt., [in part,] *Carr v. Hancock*, 216 W. Va. 474, 607 S.E.2d 803 (2004).

*Amanda C. v. Christopher P.*, No. 22-IA-2, __ W. Va. __, __ S.E.2d __, 2022 WL 17098574, at *3 (Ct. App. 2022); *accord* W. Va. Code § 51-2A-14(c) (2005) (specifying standards for appellate court review of family court order).[2]

---

[2] We have two concerns surrounding the timing of this appeal. First, the only issue the family court has resolved is the validity of the ante-nuptial agreement. Addressing the validity of the agreement is a preliminary step in the equitable distribution process; other aspects of equitable distribution remain to be decided by the family court. To the extent

Husband argues that wife signed the agreement voluntarily, with knowledge of its content and legal effect, and free from duress. Specifically, husband argues that wife signed the agreement voluntarily because she completed approximately five pages of handwritten information about her debts and assets and had the agreement signed by a notary at her bank. Husband argues that wife had knowledge of the agreement because she testified that it made her upset, and she understood that its purpose was "so that [she] could not take [husband's] business." With regard to duress, husband argues that feeling upset does not constitute duress. Husband represents that he paid for all wedding expenses. The only harm that would have come from the failure to sign the agreement was that the parties would not have gotten married. Husband contends that his actions were not unlawful, threatening, or coercive.

Wife argues that the agreement was prepared by husband's attorney, with no cover letter, nor any other communication advising her to seek independent counsel. Both parties testified that neither of them discussed the terms of the agreement, nor did they understand them. As to the issue of voluntariness, wife argues that the agreement was given to her less than two weeks prior to their out-of-state wedding. She was faced with the ultimatum of signing it or not getting married after she had already invited family and friends to the event. With regard to wife having knowledge of the agreement's content and legal effect, she testified that she skimmed the agreement because she did not understand it. Further, husband's attorney did not advise her to seek independent counsel. Last, with regard to the

---

that this issue might be described as an interlocutory ruling, West Virginia Code § 51-11-4(d)(8) specifies that this Court lacks jurisdiction over interlocutory appeals. Second, the circuit court already heard an appeal regarding the ante-nuptial agreement and remanded the case back to the family court. *See* Syl. Pt. 2, *Paxton v. Crabtree*, 184 W. Va. 237, 400 S.E.2d 245 (1990) (recognizing that order of intermediate appellate court remanding case to lower court is not ordinarily appealable to higher appellate court so long as judicial action in lower court is required).

Nonetheless, we are constrained to apply the law as explained by the Supreme Court of Appeals of West Virginia. In *Amber J. v. Shannon J.*, No. 16-0289, 2017 WL 2229978, at *4 (W. Va. May 22, 2017) (memorandum decision), the Supreme Court treated the appeal of an order addressing the validity of an ante-nuptial agreement as a final, non-interlocutory appeal. The Supreme Court explained that although the family court's "order regarding the parties' postnuptial agreement was not the last order regarding the parties' divorce, it [wa]s, nonetheless, a final order" because it "disposed of the litigation as to the validity of the parties' postnuptial agreement" and "[t]he rest of the parties' divorce proceeding could not proceed without the family court's determination regarding the postnuptial agreement[.]" Moreover, the family court entered a new order on July 15, 2022, declaring this to be a final appealable issue, and this Court, and not the circuit court, has jurisdiction over final orders in family court cases entered after June 30, 2022. *See* W. Va. Code § 51-11-4(b)(2). Accordingly, we proceed to consider the parties' arguments.

3

issue of duress, wife argues that the parties had disparate financial situations. The parties had been engaged for months, with husband paying for all expenses, and wife had no means to live on her own or hire a lawyer to review the agreement. Wife testified that she felt like she had no choice but to sign the agreement.

The Supreme Court has addressed the issue of the validity and enforceability of ante-nuptial agreements as follows.

> The validity of a prenuptial agreement is dependent upon its valid procurement, which requires its having been executed voluntarily, with knowledge of its content and legal effect, under circumstances free of fraud, duress, or misrepresentation; however, although advice of independent counsel at the time parties enter into a prenuptial agreement helps demonstrate that there has been no fraud, duress or misrepresentation, and that the agreement was entered into knowingly and voluntarily, such independent advice of counsel is not a prerequisite to enforceability when the terms of the agreement are understandable to a reasonably intelligent adult and both parties have had the opportunity to consult with independent counsel.

Syl. Pt. 2, *Gant v. Gant*, 174 W. Va. 740, 329 S.E.2d 106 (1985), *overruled on other grounds by Ware v. Ware*, 224 W. Va. 599, 687 S.E.2d 382 (2009); *see also Owen*, 233 W. Va. at 525-26, 759 S.E.2d at 472-73. *Ware* addresses the required burden of proof when one party is not represented by counsel:

> For the presumption of validity to apply to a prenuptial agreement, both parties to that agreement must be represented by independent counsel. Moreover, where one party to a prenuptial agreement is represented by counsel while the other is not, the burden of establishing the validity of that agreement is on the party seeking its enforcement.

*Ware*, 224 W. Va. at 600, 687 S.E.2d at 384, Syl. Pt. 5, in part.

After review of the record, the facts demonstrate that husband failed to meet his burden of proving that wife signed the ante-nuptial agreement with knowledge of its content and legal effect. Husband's attorney drafted the agreement and did not encourage wife to seek independent counsel. Both parties testified that they did not understand the legalese within the agreement. The family court found wife's testimony to be credible.

The requirement that husband prove the agreement was signed voluntarily was satisfied, as wife completed approximately five pages of handwritten information about her debts and assets and had the agreement signed by a notary. Additionally, husband met his burden of proving there was no duress, as the only harm that would have come to wife

was that the wedding would not have taken place. However, because husband failed to prove the agreement was signed with knowledge of its content and legal effect, we conclude the family court did not abuse its discretion when finding that the ante-nuptial agreement is unenforceable.

Accordingly, we affirm.

Affirmed.

**ISSUED:** January 10, 2023

**CONCURRED IN BY:**

Judge Thomas E. Scarr
Judge Charles O. Lorensen

**DISSENTING:**

Judge Daniel W. Greear

Greear D., dissenting:

The majority decision affirms the ruling of the Family Court of Berkeley County ("family court") that the Ante-nuptial Agreement was invalid and unenforceable. While I do not disagree with substantive merits of the majority's decision, I dispute that this Court has jurisdiction to hear this matter as an intermediate court has already weighed in on the question of validity. Wherefore, I respectfully dissent.

This matter was first ruled upon by the family court by final order entered on February 25, 2022. Counsel for husband appealed that ruling to the Circuit Court of Berkeley County.[3] By order entered on April 22, 2022, the circuit court upheld the ruling of the family court and remanded the matter for further proceedings. The ruling of the intermediate court was appealed by counsel for husband to the West Virginia Supreme Court of Appeal on May 20, 2022.

---

[1] Prior to July 1, 2022, the court with intermediate appellate jurisdiction over this matter was the Berkeley County Circuit Court.

By order entered on June 6, 2022, the West Virginia Supreme Court of Appeals denied the appeal on the basis that the matter was on remand and that the appeal was an interlocutory appeal, which is not appealable at this time. Following the denial of appeal before the West Virginia Supreme Court of Appeals, counsel for husband moved the family court for an order on remand declaring that the February 25, 2022, order is a final order for purposes of appeal. On July 15, 2022, an order was entered by the family court granting the motion. An appeal to this Court followed.[4]

Based on the procedural posture of the matter, a few issues are abundantly clear. First, this matter has previously been considered, affirmed, and remanded by the circuit court. The entry of an order by the family court affirming its own ruling, and doing nothing more, for the sole purpose of having this Court complete a second intermediate appellate review of the validity of the ante-nuptial agreement again is nothing but an attempt to circumvent the previous ruling of the circuit court, acting as an intermediate appeals court. This matter has been ruled on appeal and a second bite at the apple should not be afforded.

Second, it is apparent from the procedural history that the family court was given explicit direction from not only the intermediate court, but the West Virginia Supreme Court of Appeals, to go forward in the proceedings and rule upon matters of equitable distribution, with the understanding that the ante-nuptial agreement was invalid. This was not done.

I believe the procedural history of this matter shows that the first layer of appellate review has been afforded. Wherefore, I respectfully dissent.

---

[2] The West Virginia Intermediate Court of Appeals was created on July 1, 2022, and took jurisdiction over most family court appeals.